**In re Keith W. LANG, Debtor.**

**Annino, Draper & Moore, P.C., Plaintiff,**

v.

**Keith W. Lang, Defendant.**

**Bankruptcy No. 98–42781.**
**Adversary No. 98–4177.**

United States Bankruptcy Court, D. Massachusetts.

March 31, 2000.

---

Peter M. Stern, Springfield, MA, for debtor.

Michael R. Siddall, Annino, Draper & Moore, P.C., Springfield, MA, for plaintiff.

David W. Ostrander, Northampton, MA, Chapter 7 Trustee.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court in this adversary proceeding is a Complaint Objecting to Discharge (the "Complaint") filed by Annino, Draper & Moore, P.C. (the "Plaintiff" or the "Law Firm") against Keith W. Lang (the "Debtor"). The Plaintiff asserts that the Debtor's discharge should be denied under 11 U.S.C. § 727(a)(2)(A)[1] because the Debtor transferred funds to his father within one year of filing the Chapter 7 petition with the intent to hinder, delay, or defraud the Law Firm, a creditor.

At trial, both the Debtor and his father testified. The Debtor's petition, schedules, and statement of financial affairs were offered into evidence. The Court then took the matter under advisement. The following constitutes this Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### I. FACTS

Some time prior to the filing of this case, the Debtor was employed as a heavy equipment operator by J.F. Partyka & Son, Inc. ("Partyka"), a company in the trash hauling and disposal business. Partyka had entered into a collective bargaining agreement (the "Agreement") with the International Brotherhood of Teamsters, Local Union No. 404 (the "Union") in 1995. Shortly after entering into the Agreement, Partyka was in breach.[2] The Union filed a grievance action with the American Arbitration Association (the "AAA"). In early 1997, the AAA issued a decision awarding back pay to the Debtor and some other employees. Partyka still did not pay, and the Debtor, together with other affected employees, retained the Law Firm to represent them to enforce their respective claims under the arbitration award. Each employee signed a Contingent Fee Agreement (the "Fee Agreement"), dated June 2, 1997, hiring Michael R. Siddall as their attorney.[3]

The Union filed suit to enforce the arbitrator's award, independently of the Law Firm's involvement, on behalf of the individual employees. The Law Firm sought to intervene, but its motion was denied. However, in the interim, Partyka paid each of the employees substantially all of the money owed under the arbitrator's award. The Debtor's share was approximately $16,000.00, and, on or about December 27, 1997, the Debtor received a net check in the amount of $9,971.33, the majority of which he deposited into his checking account on January 6, 1998. The Debtor did not send any payment to the Law Firm after he received and deposited the funds.

On January 30, 1998 and thereafter, the Law Firm requested payment of sums due

---

1. In the parties' Joint Pre-Trial Statement, the Law Firm sought to add grounds for denial of discharge under §§ 727(a)(4) and (a)(5). The Debtor objected as those grounds were not set forth in the Complaint. In its opening argument at trial, the Law Firm also sought to add grounds for denial of discharge under § 727(a)(3). Given that the Plaintiff did not raise §§ 727(a)(3), (a)(4) and (a)(5) in its Complaint, the Court struck them *in limine* before trial, and ruled that § 727(a)(2)(A) was the only ground for denial of discharge before the Court.

2. The nature of the breach was not indicated, nor is it relevant.

3. The Fee Agreement recited in relevant part: "[t]he claim, controversy, and other matters with reference to which the services are to be performed are: Collection of all sums due the Client pursuant to a Collective Bargaining Agreement between International Brotherhood of Teamsters Local Union No. 404 and J.F. Partyka & Son, Inc. dated September, 1995 and the Award of Arbitrator dated January 24, 1997 ..."

under the Fee Agreement.[4] However, the Debtor testified that he ignored the requests, believing that he did not owe the Law Firm any money. At one point, the Law Firm had sent a letter to the Debtor informing him that the Law Firm had filed the aforesaid motion to intervene and that the motion had been denied. The Debtor testified that, based on that letter, he was under the impression that the Law Firm was "no longer associated with the case."

On April 16, 1998, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The Debtor listed the Law Firm's claim in Schedule F as fixed and liquidated, but the amount of the claim as uncertain.

The Law Firm filed this adversary proceeding on July 31, 1998 claiming that the Debtor transferred, removed, or concealed property within one year before the bankruptcy case was filed with the intent to hinder, delay, or defraud the Law Firm. In support of its claim, the Law Firm points to various withdrawals by the Debtor from his bank account.[5] The Debtor had withdrawn more than $5,000.00 in the approximate three month period preceding his bankruptcy petition. Of that sum, the Debtor now claims to have given approximately Four Thousand Dollars ($4,000.00)[6]

to his father in cash in small increments between January and March of 1998. The purported purpose of the transfers was to fund his father's vacation.[7] The funds were to be used to pay for the trip and for spending money. Of course, no one kept track of the transfers and neither the Debtor nor his father could testify with specificity as to when the monies were given.

In explaining his purpose for the transfers, the Debtor testified that he gave the funds to his father in repayment for the financial and emotional support his father had given him over the years, and on account of his love and affection for his father. During trial, both the Debtor and his father confirmed that the funds were not given as a repayment on pre-existing debts, but as a gift. Yet, in his bankruptcy papers, the Debtor listed the transfers to his father in response to question 3b of the Statement of Financial Affairs ("List all payments within one year immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders.").

## II. *DISCUSSION*

■ In order to support a claim for the denial of discharge under

---

**4.** The Law Firm claims that it is owed $5,386.56 pursuant to the Fee Agreement.

**5.** During trial, the Law Firm also directed the Court's attention to additional payments that the Debtor made to other creditors shortly before the filing of the Chapter 7 petition. However, a mere preferential payment of an existing debt is not a statutory ground for denial of discharge. *Everwed Co. v. Ayers (In re Ayers)*, 25 B.R. 762, 770 (Bankr.M.D.Tenn. 1982). *See also First Leasing Co. v. McGalliard (In re McGalliard)*, 183 B.R. 726, 732 (Bankr.M.D.N.C.1995) (agreeing that the mere intent to prefer one creditor over another does not meet the requirements under § 727(a)(2) if there is no specific intent to impermissibly hinder or delay another creditor); *O'Connor v. O'Connor (In re O'Connor)*, 32 B.R. 626, 628 (Bankr.E.D.Pa.1983) (same).

**6.** In the Statement of Financial Affairs, the Debtor wrote $4,000.00 as payment to inside creditors, which was later confirmed during

discovery to be the funds transferred to the Debtor's father. However, the Debtor testified during trial that he "just came up with a number" and that he is not sure exactly how much he gave his father. It is unnecessary to consider whether a smaller sum was given to the Debtor's father. It does not matter how much a debtor transferred in order to sustain an objection to discharge as long as there is the intent to defraud or to place property beyond the reach of a creditor. *Funeraria Porta Coeli, Inc. v. Rivera de Montes (In re Rivera de Montes)*, 103 B.R. 362, 365 n. 5 (Bankr.D.P.R.1989); *Imperial Millwork, Inc. v. Steinberg (In re Steinberg)*, 4 B.R. 593, 597 (Bankr.D.Mass.1980).

**7.** At trial, the Debtor claimed that the vacation was to Hawaii. In his answers to interrogatories, he claimed that the trip was to Ireland.

§ 727(a)(2)(A), four elements must be proven: (1) a transfer of property, (2) belonging to the debtor, (3) within one year of the filing of the bankruptcy petition, and (4) with the intent to hinder, delay, or defraud a creditor.[8] *Rhode Island Depositors Econ. Protection Corp. v. Hayes (In re Hayes)*, 229 B.R. 253, 259 (1st Cir. BAP 1999). The Plaintiff bears the burden of establishing each element of § 727(a)(2)(A) by a preponderance of the evidence. *Id.* at n. 7; *CIT Group Sales Fin., Inc. v. Lord (In re Lord)*, 244 B.R. 196, 199 (Bankr.D.N.H.1999); *Xerox Fin. Servs. Life Ins. Co. v. Sterman (In re Sterman)*, 244 B.R. 499, 504 (D.Mass.1999); *Congress Talcott Corp. v. Sicari (In re Sicari)*, 187 B.R. 861, 870 (Bankr.S.D.N.Y.1994). *See also Grogan v. Garner*, 498 U.S. 279, 289–91, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (applying the preponderance of the evidence standard to an action for exception to discharge under § 523 of the Bankruptcy Code).

Given the serious nature of a discharge denial, the reasons for denying a discharge " 'must be real and substantial, not merely technical and conjectural.' " *In re Sterman*, 244 B.R. at 504 (quoting *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir.1987)); *Commerce Bank & Trust Co. v. Burgess (In re Burgess)*, 955 F.2d 134, 137 (1st Cir.1992) (partially abrogated on other grounds, *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)). In light of the effect on the Debtor, a denial of discharge is an extreme step that should not be taken lightly, *La Brioche, Inc. v. Ishkhanian (In re Ishkhanian)*, 210 B.R. 944, 949 (Bankr. E.D.Pa.1997); *First Leasing Co. v. McGalliard (In re McGalliard)*, 183 B.R. 726, 732 (Bankr.M.D.N.C.1995), and, therefore, the provisions of § 727 should be construed liberally in favor of debtors.

*In re Sterman*, 244 B.R. at 503; *In re Lord*, 244 B.R. at 199; *In re Burgess*, 955 F.2d at 137; *In re Tully*, 818 F.2d at 110. Objections to discharge should be "narrowly construed in furtherance of the Bankruptcy Code's fresh start policy and the claimant must show that its claim comes squarely within an objection enumerated in Bankruptcy Code § 727(a)(2)." *Small v. Bottone (In re Bottone)*, 209 B.R. 257, 262 (Bankr.D.Mass.1997) (internal quotations and citations omitted).

Yet, the fresh start policy is not the only policy objective which the Court must consider. Creditors are also entitled to be treated fairly. "The very purpose of certain sections of the law, like [§ 727(a)(2)], is to make certain that those who seek the shelter of the Bankruptcy Code do not play fast and loose with their assets or with the reality of their affairs." *In re Tully*, 818 F.2d at 110; *Sullivan v. Tracey (In re Sullivan)*, 76 B.R. 876, 880 (Bankr.D.Mass.1987). Debtors who, intending to defraud, transfer property which would have become property of the bankruptcy estate will therefore be denied a discharge pursuant to § 727(a)(2).

In this case, the first three elements of § 727(a)(2)(A) are obviously present. Funds belonging to the Debtor were transferred to his father within one year before the bankruptcy case was filed. The dispositive issue is whether the Debtor had the actual intent to hinder, delay, or defraud the Law Firm when he gave the funds to his father.

The Law Firm must show the Debtor's actual, rather than constructive, intent to hinder, delay, or defraud. *In re Lord*, 244 B.R. at 201; *Citizens First Nat'l Bank v. Hunter (In re Hunter)*, 229 B.R. 851, 856 (Bankr.M.D.Fla.1999); *Najjar v.*

**8.** 11 U.S.C. § 727(a)(2)(A) provides:
(a) The court shall grant the debtor a discharge unless—
(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed—
(A) property of the debtor, within one year before the date of the filing of the petition[.]

*Kablaoui (In re Kablaoui),* 196 B.R. 705, 709 (Bankr.S.D.N.Y.1996). But no debtor will admit to an improper intent. The Court must therefore consider the surrounding facts and circumstances and draw inferences of a debtor's actual intent from that debtor's actions. *In re Sterman,* 244 B.R. at 504; *In re Hunter,* 229 B.R. at 857; *In re Kablaoui,* 196 B.R. at 709; *Funeraria Porta Coeli, Inc. v. Rivera de Montes (In re Rivera de Montes),* 103 B.R. 362, 365 (Bankr.D.P.R.1989). Courts have also looked to certain recognized indicia or "badges of fraud" as further evidence of a debtor's actual intent to hinder, delay, or defraud under § 727(a)(2)(A). They include: (1) the lack of or inadequacy of consideration for the transfer; (2) the existence of a family, friendship, or special relationship between the parties; (3) an attempt by the debtor to keep the transfer secret; (4) the financial condition of the party sought to be charged both before and after the transaction; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the overall chronology of events and transactions.[9] *In re Hunter,* 229 B.R. at 857; *In re Hayes,* 229 B.R. at 262; *In re Kablaoui,* 196 B.R. at 709–710. While the presence of a single factor as set forth above may lead to mere suspicion for § 727(a)(2) purposes, the accumulation of several factors indicates strongly that a debtor possessed the requisite improper intent. *In re Sterman,* 244 B.R. at 504; *Cogliano v. Hegarty (In re Hegarty),* 208 B.R. 760, 766 (Bankr. D.Mass.1997).

▮▮▮ After considering all of the evidence and testimony of the witnesses, the Court finds the presence of several of the foregoing "badges of fraud." First, the subject funds were transferred to a family member for insufficient consideration. Generally, a debtor does not receive reasonably equivalent value when a debtor transfers property out of a sense of a moral, rather than a legal, obligation. *Whitlock v. Hause (In re Hause),* 13 B.R. 75, 79 (Bankr.D.Mass.1981); *Christians v. Crystal Evangelical Free Church (In re Young),* 152 B.R. 939, 948 (D.Minn.1993), *rev'd on other grounds,* 82 F.3d 1407 (8th Cir.1996), *vacated sub nom., Christians v. Crystal Evangelical Free Church,* 521 U.S. 1114, 117 S.Ct. 2502, 138 L.Ed.2d 1007 (1997), *on remand,* 141 F.3d 854 (8th Cir. 1998), *cert. denied sub nom., Christians v. Crystal Evangelical Free Church,* 525 U.S. 811, 119 S.Ct. 43, 142 L.Ed.2d 34 (1998). Second, the Debtor failed to properly disclose the transfers. Although the Debtor listed the transfers in his bankruptcy filings, he misdescribed them. He now claims that he gave the money to his father as a gift, but he disguised the transfers as payments to a creditor. Third, at the time of the transfers, the Debtor was in poor financial condition or "insolvent" within the meaning of the Bankruptcy Code 11 U.S.C. § 101(32). He filed the bankruptcy petition soon after transferring the funds to his father and at a time when the Law Firm was seeking to collect its money to which it was entitled. Finally, and certainly not last in importance, the Debtor's demeanor at trial was not credible either when he claimed not to have understood his obligation to the Law Firm or when he testified with respect to the detail or purpose of the transfers. The Debtor was unclear and unpersuasive, even nonresponsive at times.[10]

---

**9.** Other factors that some courts have considered include: (1) the retention of possession, benefit, or use of the property in question; (2) a purported transfer of all or substantially all of the debtor's property; (3) the instrument affecting the transfer suspiciously stating that it is in fact bona fide. *In re Ishkhanian,* 210 B.R. at 952; *Cullen Ctr. Bank & Trust v. Lightfoot (In re Lightfoot),* 152 B.R. 141, 147 (Bankr.S.D.Tex.1993); *Nelson v. Peters (In re Peters),* 106 B.R. 1, 4 (Bankr.D.Mass.1989).

**10.** In *In re Rivera de Montes,* 103 B.R. at 366, the court concluded that the requisite intent to defraud was missing based on, among other things, the debtor's demeanor. *See also In re Sterman,* 244 B.R. at 504 (quoting *In re Burgess,* 955 F.2d at 137) (explaining that as

The more common fact pattern seen in § 727(a)(2)(A) cases involves a debtor who transfers property to a family member or close friend, but retains the control or enjoyment of the transferred assets. *See, e.g., In re Rivera de Montes,* 103 B.R. at 365. Here, if the Debtor can be believed, the transfers of the funds to his father were real and complete and the Debtor did not intend to receive any continued benefit therefrom. But nothing in the latter scenario precludes denial of discharge. Both situations raise questions that should be the subject of close scrutiny. Most courts agree that when a debtor transfers property gratuitously or to relatives in the shadow of a bankruptcy filing, a presumption of fraudulent intent arises. *In re Kablaoui,* 196 B.R. at 710; *In re Sicari,* 187 B.R. at 872; *Abbott Bank–Hemingford v. Armstrong (In re Armstrong),* 931 F.2d 1233, 1239 (8th Cir.1991); *Francis v. Riso (In re Riso),* 74 B.R. 750, 757 (Bankr.D.N.H.1987). A debtor should be given an opportunity to rebut that presumption. For example, debtors should not be denied their discharge for ordinary manifestations of charity or friendship. *In re Rivera de Montes,* 103 B.R. at 365–66. However, when a debtor, with the "wolf at the door," chooses to make sizable transfers of nonexempt property to a relative in consideration of their long-standing love and affection, the debtor had better have a better story to tell, and tell it better, than the Debtor here. Not only has this Debtor not rebutted the presumption of fraudulent intent, but this Court would have found the requisite element of fraudulent intent even absent the existence of the presumption.

### III. *CONCLUSION*

This Court finds that, in the face of current financial obligations which he could not or would not pay, this Debtor voluntarily parted with title to nonexempt assets which would have provided him the means to meet those obligations, and gifted them to his father within a year before the filing of the petition through a series of cash transfers for which there are no records. By those acts, the Debtor intended to hinder, delay, or defraud creditors, including the Law Firm, a prepetition creditor. Accordingly, the Debtor's discharge must be denied pursuant to § 727(a)(2)(A).

A separate judgment shall be entered in conformity with this Memorandum of Decision.

---

with other aspects of the evaluation of evidence, a determination concerning fraudulent intent is a question of fact that depends largely upon an assessment of the credibility and demeanor of the debtor).