**In re Clair Dean DAVISON, Rayma Joan Davison, Debtors.**

**First National Bank, Larned, Plaintiff,**

**v.**

**Clair Dean Davison, Rayma Joan Davison, Defendants.**

Bankruptcy No. 01–23974–7.

Adversary No. 02–6018.

United States Bankruptcy Court, D. Kansas.

Aug. 18, 2003.

Eric D. Bruce, Bruce Bruce & Lehman, Wichita, KS, for Plaintiff.

Stan M. Kenny, Wichita, KS, for Defendants.

## ORDER GRANTING SUMMARY JUDGMENT[1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

Debtors Clair Dean and Rayma Joan Davison (both of whom are normally called by their middle names) filed a Chapter 7 bankruptcy petition, statement of financial affairs, and schedules. They both signed the statement of financial affairs, declaring under penalty of perjury that the answers it contained were true and correct, even though they had failed to report certain transfers covered by at least two of the questions. In examinations conducted under Federal Rule of Bankruptcy Procedure 2004 by the plaintiff's attorney, they testified that the information contained in all the documents they had filed was true. Many months later, in continued Rule 2004 examinations, the debtors admitted that, within the time period covered by the questions on the statement of financial affairs, they had transferred some interests in oil and gas royalties to Mrs. Davison's mother, receiving nothing in return, and Mrs. Davison admitted that she had sold an interest in some real property to her sisters. Is the plaintiff entitled to summary judgment on its complaint objecting to discharge under 11 U.S.C.A. §§ 727(a)(2)(A) and (a)(4)(A)? Yes, the plaintiff is entitled to summary judgment on its complaint because the debtors' failure to disclose material information on their statement of financial affairs, along with their false statements made under oath in the plaintiff's Rule 2004 examinations, constitute false oaths made with fraudulent intent under § 727(a)(4)(A).

The debtors obtained permission to answer the plaintiff's motion for summary judgment[2] out of time,[3] and filed their response within the extended time.[4] They

---

1. The plaintiff appears by counsel Eric D. Bruce of Bruce, Bruce & Lehman, L.L.C., Wichita, Kansas. The defendant-debtors appear by counsel Stan M. Kenny, Wichita, Kansas.

2. Plaintiff's Motion for Summary Judgment filed March 28, 2003 (Doc. # 23).

3. Order Granting Motion for Leave to Answer Summary Judgment Motion Out of Time filed June 2, 2003 (Doc. # 32).

4. Defendant's [sic] Response to Motion for Summary Judgment (Doc. # 29); Memorandum in Support of Defendant's [sic] Response to Motion for Summary Judgment (Doc. # 30).

have not questioned any paragraph in the plaintiff's Statement of Uncontroverted Facts,[5] so those facts will all be treated as true.

Omitting the citations to the record, the plaintiff's Statement of Uncontroverted Facts reads as follows:

"1. The Davisons' first Rule 2004 Examination was held on February 21, 2002.

"2. At the continuation of the Rule 2004 Examination on October 3, 2002, Dean and Joan Davison admitted assigning their interest in oil and gas royalties to Joan's mother, Lila A. Wilson, in October of 2001, without any compensation. Oil & Gas revenue is shown by the document attached to the Affidavit of Tracy Eye of First National Bank in Larned.

"3. According to the Rule 2004 Examination testimony of Clair Dean Davison, he collected rent from Coronado Gold after the filing of the bankruptcy. After this was discovered, at the trustee's request, FNB–Larned collected the rent and now has $2,400.00 of rent from this property for the estate.

"4. Joan Davison testified during her Rule 2004 Examination that she transferred her interest in a short quarter of land to her sisters for $5,000 in cash within one year of the filing of the bankruptcy.

"5. Although Stan Kenny [the Davisons' attorney] knew about the transfer of the real estate since he prepared the documents, he did not properly schedule it.

"6. None of the transactions referenced in paragraphs 2. through 4. above are listed in the debtors' Schedules and Statement of Affairs.

"7. The debtors testified as shown in the October 3, 2002, Rule 2004 Transcripts and read the transcripts and made all changes and corrections they thought were necessary.

"8. The debtors have not amended their schedules or moved to change the testimony they gave at the Rule 2004 Examinations.

"9. The Davisons filed for bankruptcy on December 17, 2001."[6]

Some additional background information is helpful here. Among other things, individuals filing for bankruptcy are required to sign under penalty of perjury and file a completed "Statement of Financial Affairs."[7] Questions 3 through 10 on the Statement ask debtors to report various types of transfers of their property that occurred within various periods before they filed for bankruptcy. Question 7 requires debtors to: "List all gifts … made within one year immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member.…" Question 10 requires them to: "List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within one year immediately preceding the com-

---

5. The Statement of Uncontroverted Facts is contained in plaintiff's Memorandum in Support of Motion for Summary Judgment at 1–3 (attached to Doc. # 23, plaintiff's Motion for Summary Judgment).

6. *Id.*

7. *See* Fed. R. Bankr.P. 1007(b)(1); Official Form 7 (Statement of Financial Affairs); Fed. R. Bankr.P. 9009 (Official Forms shall be used, with any appropriate alterations).

mencement of this case." For each of these questions on the Davisons' statement of affairs, a box beside the question is marked to indicate that they had made no such transfers. The Davisons offer no explanation for their failure in answering these questions to report the transfers of the oil and gas royalty interests and the real property interest.

According to materials attached to the affidavit of the plaintiff's vice president,[8] oil and gas royalty checks were issued to the Davisons on December 26, 2001, and January 28, 2002, and another one may have been issued on February 20, 2002. Since these checks were issued after the Davisons filed for bankruptcy, it is unclear what interests they might have transferred to Mrs. Davison's mother earlier. In the transcripts attached to the plaintiff's motion, both the Davisons testified that their attorney was involved in preparing the documents required for the transfers of their oil and gas royalty interests and Mrs. Davison's real property interest.

*11 U.S.C.A. § 727(a)(2)(A)*

■ The plaintiff contends that summary judgment is proper under 11 U.S.C.A. § 727(a)(2)(A), which provides:

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition. . . .

The plaintiff must establish by a preponderance of the evidence that the Davisons violated this provision.[9] The court must find actual intent to hinder, delay, or defraud a creditor, proven either by direct evidence or by inference from the facts and circumstances of the Davisons' conduct.[10]

■ The plaintiff has presented no direct evidence of the Davisons' intent, so the court must consider inferences that can be drawn. Courts have identified various types of debtor conduct, referred to as "badges of fraud," that might suggest actions intended to hinder, delay, or defraud a creditor. In *Marine Midland Business Loans, Inc. v. Carey (In re Carey),*[11] the Tenth Circuit identified a variety of indicia of fraud, including: (1) concealment of pre-bankruptcy conversions; (2) conversion of assets immediately before the filing of the bankruptcy petition; (3) gratuitous transfers of property; (4) continued use by the debtor of transferred property; (5) transfers to family members; (6) obtaining credit to purchase exempt property; (7) conversion of property after entry of a large judgment against the debtor; (8) a pattern of sharp dealing by the debtor prior to bankruptcy; (9) insolvency of the debtor resulting from the conversion of the assets; and (10) the monetary value of the assets converted.

---

**8.** Exhibit E to plaintiff's Memorandum in Support of Motion for Summary Judgment (attached to Doc. #23, plaintiff's Motion for Summary Judgment).

**9.** *First National Bank v. Serafini (In re Serafini),* 938 F.2d 1156 (10th Cir.1991) (standard of proof under § 727(a)(2) is preponderance of evidence, not clear and convincing).

**10.** *Reese v. Kulwin (In re Kulwin),* 187 B.R. 341, 346 (Bankr.D.Kan.1995), *vacated pursuant to parties' settlement,* 208 B.R. 229 (Bankr.D.Kan.1997) (citing *Fox v. Schmit (In re Schmit),* 71 B.R. 587, 590 (Bankr.D.Minn. 1987)).

**11.** 938 F.2d 1073, 1077 & n. 4 (10th Cir. 1991).

Here, the plaintiff's evidence indicates that: (1) the Davisons concealed the transfers by omitting them from their statement of financial affairs; (2) the transfers occurred within two to three months before the Davisons filed for bankruptcy; (3) the Davisons apparently continued to receive royalty checks after they had transferred their interests in the royalties to Mrs. Davison's mother; (4) the transfer of the royalty interests was gratuitous; and (5) both the transfers were to family members. The Davisons have never amended their schedules to include the transfers, and they did not promptly bring the omissions to anyone's attention.[12] So far as the materials before the court show, the Davisons did not reveal the transfers until they were specifically questioned about them more than nine months after they had filed their bankruptcy petition and schedules. They have offered no explanation for their failure to disclose the transfers earlier.

The plaintiff also argues that the Davisons' conduct in not turning over postpetition rental income to the trustee shows that they intended to defraud their creditors. While it may be true that Mr. Davison did not turn over to the trustee the rent he collected postpetition, the plaintiff's statement of facts does not include this allegation, nor does any admission of this possibility appear in the summary judgment materials. In addition, the plaintiff's statement of facts does not indicate that Mrs. Davison had anything to do with the postpetition rent collection, so any failure to turn the rent over to the trustee can shed no light on her intent.

Although many indicia of fraud exist here, the value of the assets transferred is relatively small. In 2001, the royalty interests generated gross income of $1,883.48 and net income to the Davisons of about $1,100, and in the first two months of 2002, a gross of $172.36 and a net of something less than $128. The real property interest was apparently worth the amount Mrs. Davison sold it for, $5,000. The plaintiff has not suggested that this was not a fair price, so this transfer does not appear to have been for less than reasonable value. The fact the real property was transferred to Mrs. Davison's sisters is also somewhat less suggestive of fraudulent intent here because they were the co-owners of the property, those most likely to be interested in buying and willing to pay the most for a fractional interest in real property.

Furthermore, Mrs. Davison gave testimony that tends to negate the inference that the Davisons' had any intent to hinder, delay, or defraud a creditor when they made these transfers. She said that her mother actually owned the oil and gas royalty interests and had merely been sharing them with her.[13] She also testified that she used the money from the sale of the real estate to pay general living expenses, to buy fuel for her vehicle, to finance the Davisons' Christmas, and to help her husband cover some overdrafts in a checking account.[14] These statements, if believed by the fact finder, could lead to the conclusion that the Davisons were not acting with any fraudulent intent when they made the transfers. The court con-

---

12. *See Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294 (10th Cir.1997) (as a matter of law, absent other evidence of fraud, no inference of fraudulent intent can be drawn from omission from debtor's schedules when debtor promptly brings it to court's or trustee's attention).

13. Exhibit C to plaintiff's Memorandum in Support of Motion for Summary Judgment (attached to Doc. # 23, plaintiff's Motion for Summary Judgment) at 7–9.

14. *Id.* at 10–11.

cludes that the plaintiff's materials do not establish as a matter of law that the Davisons made the transfers with the intent to hinder, delay, or defraud a creditor.

*11 U.S.C.A. § 727(a)(4)(A)*

The plaintiff also contends that summary judgment is proper under 11 U.S.C.A. § 727(a)(4)(A), which provides:

> (a) The court shall grant the debtor a discharge, unless—
>> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>>> (A) made a false oath or account. . . .

*False Oath or Account*

 "To trigger section 727(a)(4)(A), the false oath must relate to a material matter and must be made willfully with intent to defraud."[15] A debtor's omission of assets from his statement of affairs or schedules may constitute a false oath under § 727(a)(4)(A).[16] A false statement by the debtor at an examination during the course of the proceedings also may constitute a false oath under § 727(a)(4)(A).[17]

Here, the plaintiff argues that the Davisons' failures to disclose the transfers of the oil and gas royalty interests and the real property interest on their statement of financial affairs, and at their initial 2004 examinations, constitute false oaths under § 727(a)(4)(A). The Davisons concede that they omitted the transfers and have offered no explanation for their failure to report them. The court finds that the omissions from the statement of financial affairs evidence instances of false oath. The uncontroverted facts establish that, within a few months before filing for bankruptcy, the Davisons gave the oil and gas royalty interests to Mrs. Davison's mother, and Mrs. Davison sold her interest in the real property to her sisters.

*Material Omissions*

 The court also finds that the omitted transfers were "material" under § 727(a)(4)(A). "The subject matter of a false oath is material and warrants a denial of discharge if it is related to the debtor's business transactions, or if it concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property."[18] The court concludes that the Davisons' undisputed omissions were material because the omitted information concerned the discovery of assets and the existence or disposition of their property.[19]

*Fraudulent Intent*

 In general, the court is reluctant to grant summary judgment on a cause of action under § 727(a)(4) inasmuch as the element of fraudulent intent usually involves questions of fact involving the debtor's state of mind. However, "a finding of actual intent may be based on circumstantial evidence or on inferences drawn from a course of conduct. This is because a debtor is unlikely to testify that the intent was fraudulent. Thus a court may look to all the surrounding facts and

---

**15.** *In re Calder,* 907 F.2d 953, 955 (10th Cir. 1990) (citing 4 Collier on Bankruptcy ¶ 727.04[1] at 727–54 to –57 (15th ed.1987)).

**16.** *Id.* (citing *Farmers Co-op. Ass'n v. Strunk,* 671 F.2d 391, 395 (10th Cir.1982)).

**17.** 6 Collier on Bankruptcy ¶ 727.04[2] at 727–42 (Alan N. Resnick, et al. eds., 15th ed. rev.2003).

**18.** 6 Collier on Bankruptcy ¶ 727.04[1][b] at 727–40 (Alan N. Resnick, et al. eds., 15th ed. rev.2003).

**19.** *See, e.g., In re Calder,* 907 F.2d at 955.

circumstances."[20] In this case, the Davisons' course of conduct supports the conclusion that they acted fraudulently in making false oaths in connection with their bankruptcy.

■ The plaintiff presents the following facts and circumstances regarding the Davisons' course of conduct as evidence of their fraudulent intent: (1) the Davisons have never filed any amendment to correct their statement of financial affairs; (2) they did not voluntarily bring the omissions to anyone's attention at any time before the plaintiff examined them for the second time under Rule 2004; (3) the Davisons waited until they were specifically questioned about the omitted transfers to reveal that the transfers had occurred; and (4) they have not explained why they failed to disclose the transfers in their statement of financial affairs.[21] The court finds, based on the foregoing, that a reasonable inference of fraudulent intent may be drawn from the Davisons' course of conduct. Moreover, the court concludes that the number of known omissions—here, two—also supports a finding of fraudulent intent.[22]

In their response to the plaintiff's motion, the Davisons suggest that a variety of factual issues remain to be resolved in this proceeding. Only one of these potential issues is relevant to the claims the plaintiff is asserting. The Davisons describe this issue as whether they intended to defraud, hinder, or otherwise harm the plaintiff's position by transferring property prior to filing their bankruptcy petition. This assertion is relevant only to the plaintiff's claim under § 727(a)(2)(A), and the court is denying summary judgment on that claim. The intent that is relevant under § 727(a)(4)(A) is whether the Davisons "knowingly and fraudulently" omitted the transfers from their statement of financial affairs, not whether they made the transfers with a fraudulent intent. As indicated, the Davisons have offered no explanation for the omissions, and they do not allege in their response that they did not make them knowingly and fraudulently.

■ The remaining factual issues asserted in the Davisons' response are misdirected. The alleged issues are: (1) whether the plaintiff failed to mitigate losses by requiring a fire sale of assets before the Davisons filed for bankruptcy; (2) whether the plaintiff used threats and coercion to obtain loan guarantees from the Davisons; (3) whether the plaintiff "failed to abide by Truth in Lending laws in obtaining loan guarantees" from the Davisons; (4) whether the plaintiff intended to humiliate and destroy the Davisons' reputations by placing advertisements in a local newspaper requesting "financial irregularity information"; and (5) whether the plaintiff suffered any financial harm as a result of the Davisons' pre-bankruptcy transfers of property. These considerations might be relevant if the question here were the validity or amount of the plaintiff's claim against the Davisons. Instead, the purpose of the prohibition in

20. 6 COLLIER ON BANKRUPTCY ¶ 727.02[3][b] at 727–18 (Alan N. Resnick, et al. eds., 15th ed. rev.2003) (footnotes omitted). *See also In re Calder* at 955–56 (and cases cited therein).

21. *See In re Tully*, 818 F.2d 106, 110 (1st Cir.1987) (once it reasonably appears oath is false, burden falls on debtor to come forward with evidence that debtor did not commit offense charged).

22. *See In re Calder*, 907 F.2d at 956 ("Furthermore, it is significant that there was not one but four separate omissions from Calder's Statement of Affairs and Schedule B–1.") (citing *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 252 (4th Cir.1987)).

§ 727(a)(4)(A) against making false oaths or accounts is to enforce the requirement that "those who seek shelter of the bankruptcy code must provide 'complete, truthful and reliable information.'"[23] Even if the Davisons' accusations could be shown to be true, the plaintiff's improper actions would not excuse the Davisons' knowing and fraudulent false oaths. Furthermore, § 727(a)(4)(A) includes no requirement that false oaths also be shown to have harmed either the trustee or any creditor.[24]

Thus, the court has determined that the plaintiff's motion for summary judgment seeking denial of the Davisons' discharge under § 727(a)(4)(A) should be granted.

The plaintiff's claims in this proceeding are such that it can obtain the relief it seeks—the denial of the Davisons' discharge—by succeeding on either claim. Consequently, although the court finds that the plaintiff has not established that the Davisons violated § 727(a)(2)(A), the further finding that the plaintiff has established that they violated § 727(a)(4)(A) means that the Davisons will not receive a discharge in their bankruptcy case.

IT IS THEREFORE ORDERED that the plaintiff's motion for summary judgment is granted to the extent it seeks relief under § 727(a)(4)(A).

23. *In re Calder,* 907 F.2d at 956 (quoting *In re Tully,* 818 F.2d 106, 110 (1st Cir.1987)).

24. *See* 6 COLLIER ON BANKRUPTCY ¶ 727.04[1][b] at 727–41 (Alan N. Resnick, et al. eds., 15th ed. rev. 2003) ("In determining whether an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors. Even if the debtor can show that the assets were of little value or that a full and truthful answer would not have directly increased the estate assets, a discharge may be denied if the omission adversely affects the trustee's or creditors' ability to discover other assets or to fully investigate the debtor's pre-bankruptcy dealing and financial condition. Similarly, if the omission interferes with the possibility of a preference or fraudulent conveyance action the omission may be considered material." (Footnotes omitted.))