**In re Tracy T. TURNER and Kerry Royal Turner, Debtors.**

**First Savings Bank, Plaintiff,**

v.

**Tracy T. Turner and Kerry Royal Turner, Defendants.**

**Bankruptcy No. 7–03–15208 MA.
Adversary No. 03–1361 M.**

United States Bankruptcy Court,
D. New Mexico.

Dec. 21, 2005.

---

44. *Id.*

756

P. Diane Webb, Albuquerque, NM, for Debtors.

Frederick H. Sherman, Deming, NM, J.C. Robinson, Silver City, NM, Charles W. Sullivan, Stephen P. Curtis, Christopher A. Holland, Scott E. Turner, Louis Puccini, Jr., Albuquerque, NM, David McNeill, Jr., Las Cruces, NM, for Creditors.

James A. Roggow, Las Cruces, NM, for Creditor/Plaintiff.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

THIS MATTER is before the Court on the Motion for Summary Judgment filed by Plaintiff, First Savings Bank (the "Motion") on its Complaint Objecting to Discharge of the Debtors, Tracy and Kerry Turner. No response to the Motion has been filed. After reviewing the Motion, the affidavits, depositions and exhibits to the Motion, the arguments and authorities, the Court has determined that summary judgment is appropriate and in connection therewith finds as undisputed facts the following:

1. Debtors Tracy T. Turner and Kerry Royal Turner (collectively, the "Defendants") filed this Chapter 7 bankruptcy proceeding on June 27, 2003.

2. Plaintiff filed this adversary proceeding objecting to the Defendants' discharge under §§ 727(a)(2) and (a)(4) of the Bankruptcy Code on October 27, 2003. Plaintiff is a judgment creditor of the Defendants. Affidavit of Dale Lane ("Lane Affidavit"), Branch President of Plaintiff, First Savings Bank in Silver City, New Mexico, ¶ 4.

3. On October 8, 2002, Defendants received a deed from Dale Lane to approximately 2.717 acres of real property located at 36 Ridge Road, Silver City, New Mexico (the "Property"). Warranty Deed (Joint Tenants), Exhibit 4 to Motion. The Property has been at all relevant times free and

clear of all liens or encumbrances. Tracy Turner Deposition p. 63.

4. The Property contains a plumbing shop and warehouse. The Property "is not the location of the aggregate or gravel pit owned and operated by [Defendants], rather 3535 Railroad Drive, Silver City, New Mexico is the location of the aggregate pit and gravel pit . . . said location is 3 miles away from [the Property]. . . ." Lane Affidavit ¶ 6. Defendants disclosed their ownership of the property located at 3535 Railroad Drive (the "Aggregate Pit property") on their schedules and statements.

5. Defendants formed Silver City Plumbing & Aggregate, Inc. ("SCPA") in October 2002 and own 100% of SCPA's stock. Defendants' Schedule B states that their stock in SCPA has a value of $1.00. On November 8, 2002, approximately 7 months before they filed this bankruptcy case, Defendants transferred the Property to SCPA for no consideration. Warranty Deed, Exhibit 5 to Motion.

6. On May 16, 2003, less than two months before the bankruptcy filing, Defendants caused SCPA to transfer the Property for no consideration to their friends Robert J. Shuya ("Shuya") and Sandra L. Shuya (together "the Shuyas"). Warranty Deed (Joint Tenants), Exhibit 6 to Motion; Deposition of Robert Shuya ("Shuya Deposition") p. 23. This transfer was initially intended to be a capital investment in connection with a business venture between Shuya and Tracy Turner. Shuya Deposition pp. 14–18. The business venture never materialized. Shuya Deposition pp. 13–15. Soon after the transfer of the Property, Shuya informed Tracy Turner that he wanted to transfer the

Property back to SCPA. Shuya Deposition p. 15–16.

7. Instead of accepting a transfer of the Property back to SCPA, Tracy Turner proposed that Shuya transfer the Property to a trust. Shuya Deposition p. 42. Shuya and Tracy Turner met with Tracy Turner's accountant, Tom Laws ("Laws"), and discussed the creation of the trust. Shuya Deposition pp. 25–27. The trust document, called the CBT Blind Trust (the "Trust"); a name based on the initials of the Turner's children, was executed by Shuya in February 2004 in Laws' office naming Laws as trustee. Shuya Deposition p. 26; Laws Deposition pp. 12–15, 44; Fielder Deposition p. 12. Shuya and Ken Garrison, Kerry Turner's father, are the beneficiaries of the Trust. Laws Deposition p. 16; Shuya Deposition p. 29.[1] Shuya transferred the Property to the Trust for no consideration. Fielder Deposition p. 6; Laws Deposition p. 12. The purpose of the Trust was stated by Tom Laws:

> A: The request on the part of—well, it was a request on the part of Tracy and Bob [Shuya] to use the trust, because all of these ongoing—all this ongoing litigation. Tom in bankruptcy, Tracy in bankruptcy . . . . the transactions took place prior to any bankruptcies being filed; that is, you know, passing everything back and forth, and then it ended up in Bob's hands. So they wanted to use a trust as an alter ego to transfer the property.

Laws Deposition p. 12.

8. Sometime between the date of the transfer of the Property to Shuya and the transfer by Shuya to the Trust, Jeff Sires ("Sires") made an offer to purchase the Property for approximately $150,000.00. Shuya and Sires executed a contract of

---

1. Shuya's deposition testimony indicates that he was surprised that he was listed as a beneficiary. Shuya Deposition p. 30.

sale for the Property. Deposition of Jim Thomison ("Thomison Deposition"), Real Estate Agent, pp. 8–10. Out of the sale proceeds Shuya planned to take only the amount needed to cover any income or property tax liability on the Property with the remainder of the proceeds going to SPCA. Shuya Deposition p. 31–32; Thomison Deposition pp. 8–10. Although the Shuyas were the owners of the Property, Tracy Turner was involved in the negotiations in connection with this attempted sales transaction. Thomison Deposition p. 9–10. Thomison testified that in connection with this sale,

> He [Tracy Turner] called after the transaction, the contract was signed by Sires and Shuya, Tracy was concerned about how fast we were going to be able to get this done. And I was telling him, well, I don't know if it's actually going to get done because of the title companies
>
> . . .
>
> . . .
>
> Q: Am I to take it you received numerous calls from Tracy?
>
> A: I would say at least six calls.
>
> Q: What does he care if he doesn't own the real estate?
>
> A: That's a very good question. . . .

Thomison Deposition pp. 9–10.

9. The sale of the Property included a building on the Property and several pieces of equipment, including a metal bender, located inside of the building. Thomison Deposition pp. 8–9. The transfer of the Property to the Trust was to take place before the proposed closing date of the sale to Sires, and the Trust was to be the entity used to transfer the Property to Sires. Thomison Deposition p. 12.[2]

The sale did not close because the title company would not issue title insurance after becoming aware of Defendants' bankruptcy filing. Thomison Deposition p. 7.

11. Tracy Turner testified that Shuya transferred the Property to an unknown corporation:

> Q: And what's happening with 36 Ridge Road now?
>
> A: You'll have to ask Mr. Shuya
>
> Q: How much did you value 36 Ridge Road at?
>
> A: I haven't put a value on it.

Tracy Turner Deposition p. 60. Tracy Turner again testified as follows:

> Q: Okay. Did you ever have any discussions with Mr. Shuya about that property being deeded back?
>
> A: He told me that he wanted to return the property, and I told him I could not because it was in the bankruptcy, and I was in bankruptcy, and he had already deeded it to me. And since then, I believe he's liquidated the property.
>
> Q: What makes you think he's liquidated the property?
>
> A: He's told me he doesn't want it anymore.
>
> Q: Did he tell you what he'd done with it?
>
> A: Not in any great detail.
>
> Q: What did he tell you
>
> A: That he had liquidated it.
>
> Q: Did he tell you who to?
>
> A: (Indicating)
>
> Q: For how much?
>
> A: (unintelligible)
>
> Q: I need an answer.

---

2. "From what Shuya and Tracy were telling me, that the property was going to get transferred from Bob Shuya to some type of a trust, and then it was going to go from this trust to my buyer, which was Jeff Sires, and Tom Laws was the one that was going to draw up this trust agreement." Thomison Deposition p. 12.

A: He didn't give me any of those details.

Q: When did he tell you that he had liquidated it?

A: The first of this year.

. . .

Q: Do you have any idea who's in possession of 36 Ridge Road?

A: I believe he sold it to another corporation.

Q: Who was it sold to?

A: To another corporation. He didn't give me those exact details.

Tracy Turner Deposition pp. 66–68.

11. Defendants formed Spreader Services, Inc., a subchapter-S corporation, in November 2003. Deposition of Sharon Fielder ("Fielder Deposition"), employee of Tom Laws pp. 6–8. In December 2003 Tracy Turner transferred his 100% ownership of Spreader Services, Inc. to Ken Garrison, his father-in-law. Laws Deposition pp. 33. Several pieces of equipment were transferred to Spreader Services, Inc. Laws Deposition p. 35. The CBT Blind Trust transferred the Property to Spreader Services, Inc. Laws Deposition p. 12.

12. The Defendants have never attempted to reclaim title to the Property for SCPA. Tracy Turner Deposition p. 63.

13. The Defendants did not disclose the transfers of the Property from themselves to SCPA and did not disclose the transfer from SCPA to the Shuyas. None of the later transactions were disclosed on their schedules and statements in this bankruptcy. Tracy Turner Deposition p. 63. In their schedules and statements, Defendants listed one transfer within one year of the bankruptcy filing in which the transferee was SCPA stating that the fol-lowing was received: "Aggregate pit and equipment" and "100% of Silver City Aggregate Stock." Statement of Financial Affairs ¶ 10. The "Aggregate pit and equipment" that Defendants listed as transferred is not the Property, but it a parcel of property located 3 miles from the Property. Lane Affidavit ¶ 6.

14. SCPA had 2 checking accounts at Western Bank Lordsburg on June 30, 2003, containing balances of $2,691.02 and $949.11 on June 30, 2003, three days after Defendants filed this bankruptcy proceeding. Defendants were authorized signatories for both accounts. Affidavit of Mike Martin, President of Western Bank Lordsburg ¶ 8–9.

15. Defendants listed on Schedule B accounts receivables for SCPA with "unknown" value. However, after the bankruptcy filing but before the creditors meeting, Defendants collected several accounts receivable belonging to SCPA totaling $5,300.50 from Ritchie Brothers; $3,278.28 from Santa Fe County; $994.07 from the Town of Silver City; $84.69 from Texas New Mexico Power; $5,632.10 from Chip Spreader Services. Defendants deposited these funds into the SCPA accounts. Martin Affidavit ¶ 10; Deposit Statements attached as Exhibits to Motion.

16. Several checks, cashier's checks and withdrawals were made by Defendants from the SCPA checking accounts before and after the bankruptcy filing from mid-May to July 2003. Defendants wrote checks and withdrew cash from the accounts totaling approximately $11,000.00 for payment to vendors such as Walmart, Chevron, and Radio Shack. Tracy Turner testified that he collected accounts receivable of SCPA valued at $10,000.00. Tracy Turner Deposition p. 24.[3]

---

3. Defendants sold assets of SCPA after the bankruptcy was filed: a Chevy Pickup sold October/November 2003 for $5,000.00 and a metal brake press & shear in December

## Discussion

Summary judgment is governed by Rule 56, Fed.R.Civ.P., made applicable to adversary proceedings by Rule 7056, Fed. R.Bankr.P. Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden can be met by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Rule 7056(e), Fed. R. Bankr.P. In determining whether summary judgment is appropriate, even when the adverse party does not respond, the Court will construe the evidence in the light most favorable to the party opposing summary judgment. *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir.1996).

██ Plaintiff's first claim if for denial of discharge under § 727(a)(2), which states that a discharge shall be denied if a debtor, with intent to hinder, delay or defraud, transfers, removes or conceals property of the debtor within one year before the filing or after filing of the petition. 11 U.S.C. § 727(a)(2); *Gullickson v. Brown*, 108 F.3d 1290, 1293 (10th Cir. 1997). In order to obtain summary judgment denying Defendants a discharge under § 727(a)(2)(A), Plaintiff must show by a preponderance of the evidence that (1) the debtor transferred, removed, concealed, destroyed, or mutilated, (2) property of the estate, (3) within one year prior to the bankruptcy filing or after the bank-

ruptcy, (4) with the intent to hinder, delay, or defraud a creditor. 11 U.S.C. § 727(a)(2)(A); The Plaintiff bears the burden of establishing each element of § 727(a)(2)(A) by a preponderance of the evidence. *In re Lang*, 246 B.R. 463, 468 (Bankr.D.Mass.2000) (citations omitted); *Gullickson*, 108 F.3d at 1293.

All of a debtor's interests in property at the time of filing become property of the estate. 11 U.S.C. § 541(a). Seven months before they filed this bankruptcy petition, Defendants transferred the Property that would have otherwise become property of Defendants' bankruptcy estate to their corporation, SCPA. By this transfer, Defendants removed the Property, which was unencumbered, from the estate and the Trustee, who presumably would have sold the Property for the benefit of Defendant's creditors. Moreover, Defendants concealed their ownership of the Property from the Trustee and their creditors by transferring title to the Property to their corporation. The undisputed facts show that Defendants transferred, removed or concealed property of the estate within one year prior to the bankruptcy filing, establishing the first three elements of a § 727(a)(2) claim.

██ With regard to the fourth element, Plaintiff's must show that when Defendants transferred, removed or concealed property of the estate, Defendants had the actual intent to hinder, delay or defraud their creditors. Actual intent may be shown through circumstantial evidence from which the Court may infer whether Defendants acted with actual intent to hinder, delay or defraud creditors. *Lang*, 246 B.R. at 468. The Court can infer intent from the undisputed facts showing the existence of certain indicia or badges of

2003/January 2004 for $6,000.00 to $7,000.00. Tracy Turner testified that he

pocketed the proceeds from these sales. Tracy Turner Deposition pp. 28–31.

fraud. These badges of fraud evincing a debtor's actual intent to hinder, delay, or defraud include the following: (1) lack or inadequacy of consideration for transfer; (2) existence of a family, friendship, or special relationship between parties; (3) attempt by debtor to keep transfer secret; (4) financial condition of the party sought to be charged both before and after transaction; (5) existence or cumulative effect of pattern or series of transactions or course of conduct after incurrence of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) overall chronology of events and transactions. *Gullickson,* 108 F.3d at 1293. *See also, Lang,* 246 B.R. at 469 (finding that transfer of estate assets to debtor's father within one year of bankruptcy warranted denial of discharge). Some courts consider as a badge of fraud the retention of possession, benefit, or use of the property in question by the debtor even after the debtor transfers the property. *Lang,* 246 B.R. at 469 n. 9.

■ The undisputed evidence shows that several badges of fraud are present in this case. Defendants transferred the Property from their individual ownership to SCPA, their wholly-owned corporation, thereby removing and concealing the Property from the reach of the Trustee and creditors in their personal bankruptcy. Tracy Turner then directed a series of transactions that show an intent to keep the Property concealed from the Trustee and creditors. Tracy Turner orchestrated the creation of the Trust, an entity intended to be used to sell the Property to Sires. Tracy Turner was the driving force behind an attempted sale of the Property by the Trust. When the sale to Sires fell through, Tracy Turner directed the Trust to transfer the Property to Spreader Services, Inc., another of Defendants' wholly owned corporations. Defendants then transferred the Spreader Services, Inc. stock to another family member, Ken Garrison placing the ownership interest in the Property in another of his family members. This elaborate series of transfers shows a pattern of behavior that leads to the conclusion that Defendants intentionally transferred and concealed the Property in order to hinder, delay or defraud creditors. Tracy Turner's deposition testimony also supports a finding of intent to hinder, delay or defraud. Tracy Turner testified that he did not know what happened to the Property after SCPA transferred it to the Shuyas. His testimony is contrary to the testimony of three disinterested witnesses, Shuya, Laws, and Thomison describing the transfers set up by Tracy Turner with the help of his accountant, Tom Laws. Tracy Turner explained that he did not need to disclose the initial transfer because his SCPA was not in bankruptcy; therefore, he did not need to disclose its assets. However, his explanation for why he did not want Shuya to transfer the property back to SCPA was that he was in bankruptcy. This testimony shows an intent conceal his ownership interest in the Property from the Trustee and creditors. *In re Lang,* 246 B.R. at 469 (denying discharge of debtor who transferred property to a family member for insufficient consideration, failed to properly disclose the transfers and debtor "was unclear and unpersuasive, even nonresponsive at times during his testimony."). The initial and subsequent transfers of the Property were without consideration and were to transferees with close ties to Defendants, i.e. Defendants' corporation and Defendants' family members and friends supporting a finding of fraudulent intent. *See Najjar v. Kablaoui (In re Kablaoui),* 196 B.R. 705, 710 (Bankr.S.D.N.Y.1996)(stating, "a presumption of actual fraudulent intent necessary to bar a discharge arises when property is either transferred gratuitously or is

transferred to relatives.")(quoting, *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 91 (5th Cir.1989)). Moreover, Defendants collected SCPA accounts receivable and used SCPA checking account funds for their personal expenses, providing further proof of Defendants use of the corporate entity as a tool to keep assets away from creditors yet fully available to Defendants.

Defendants have failed to refute this evidence having not responded to the Motion; however, even when viewed in a light favorable to Defendants, the undisputed evidence shows that Defendants concealed, transferred or removed property of the estate, with intent to hinder, delay or defraud their creditors. Therefore, Defendants should be denied a discharge under § 727(a)(2).

■ Plaintiff has also objected to Defendants' discharge under § 727(a)(4) for knowingly and fraudulently making a false oath in or in connection with the case— made a false oath or account. Debtors have an affirmative duty to fully disclose all assets and interests in property in their schedules and statements, which debtors sign under penalty of perjury; therefore, debtors who file materially false schedules and statements can be denied a discharge under § 727(a)(4). Debtors must also amend their schedules and statements to keep the information in them current. *In re Okan's Foods, Inc.*, 217 B.R. 739, 752 (Bankr.E.D.Pa.1998)(noting that duty of disclosure continues throughout the case requiring debtors to amend schedules "whenever it becomes necessary in order to insure the accuracy and reliability of the information disclosed therein.").

■ To warrant denial of discharge under this provision the false oath must be related to a material fact. *In re Davison*, 296 B.R. 841, 847 (Bankr.D.Kan.2003). "The subject matter of a false oath is material and warrants a denial of dis-

charge if it is related to the debtor's business transactions, or if it concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property." *Id.*

■ The Court finds that the Defendants failed to disclose the initial transfer of the Property in their the schedules and statements. This omission concerns an asset, therefore, the omission is material. These undisputed facts support summary judgment denying Defendants a discharge under § 727(a)(4) in addition to the summary judgment denying discharge under § 727(a)(2). *See Davison*, 296 B.R. at 848 (finding that omission of assets and transfers of property were material and warranted denial of discharge under § 727(a)(4)).

This opinion constitutes the Court's findings of fact and conclusions of law under Rule 7052, Fed. R. Bankr.P. An appropriate judgment will be entered.