In re Marty Alan GORDLEY and Eugenia May Gordley, SS# 295–38–6306 (W), SS# 268–44–9571 (H), Debtors.

MONTGOMERY WARD & COMPANY, INC., Plaintiff,

v.

Marty Alan GORDLEY and Eugenia May Gordley, Defendants.

Adv. No. 1–83–0310.
(Related Case No. 1–83–00165).

United States Bankruptcy Court,
S.D. Ohio, W.D.

April 11, 1984.

Richard L. Eisnaugle, Portsmouth, Ohio, for debtors/defendants.

William C. Knapp, Cincinnati, Ohio, for plaintiff.

David W. Kuhn, Portsmouth, Ohio, Trustee in Bankruptcy.

## DECISION

BURTON PERLMAN, Bankruptcy Judge.

This adversary proceeding went to trial on the Second Amended Complaint filed by plaintiff Montgomery Ward and Company, Inc. In such Second Amended Complaint, plaintiff relies upon 11 U.S.C. § 727(a)(2) in seeking relief against defendants. That is, the relief sought is that defendants be denied a discharge. Defendants are debtors in their related bankruptcy case. The adversary proceeding came on for trial. The only witness to testify was defendant Marty Gordley. In addition, interrogatories and answers thereto were placed in evidence as well as certain additional documentary exhibits.

Based upon these evidentiary materials, we find the following facts. Defendant Marty Gordley began a Montgomery Ward catalog agency business in August of 1980 which initially was located at premises just outside Peebles, Ohio. In March 1981 a building located at 54 N. Main Street in Peebles was acquired as business premises. The property was purchased for $37,000.00 from Lowell Cottrell. Marty Gordley's father, Damon, paid $1,000.00 to Cottrell, and the balance was financed by a mortgage loan from the Adams County Building and Loan Company. Defendants were primarily liable on the mortgage, while Damon Gordley was a "co-obligor" thereon. (On

this record it is not possible to be more specific about the nature of Damon's obligation because the relevant documents are not in the record. The interrogatories refer to him as a "co-obligor", while in his testimony at the trial Marty Gordley said that Damon had "co-signed" on the loan.)

Upon the acquisition, Marty Gordley undertook some improvements in the premises and financed them as well as other business expenditures such as $10,000.00 for a franchise, by means of five loans from the Farmer's Bank. These five loans totalled $32,000.00 and were co-signed by Marty Gordley's father. Marty used the proceeds of these loans to install a tire shop in the premises and panelling, ceiling work, painting, and extensive electrical work were done to the premises. The $32,000.00 was the subject of five loans represented by notes dated April 17, 1981, August 10, 1981, May 19, 1981, March 16, 1981, and March 22, 1982. There is no direct evidence in this record regarding the success of debtor's business, but it is a fair inference that it did not flourish. The statement contained in debtor's bankruptcy petition filed January 20, 1983 indicates that both debtors were at that time employed other than in the catalogue business. (Though requested at Question 2(b) the length of debtors' then present employment is not furnished.) A lack of success in business can further be inferred from the nature of the debts listed in debtor's bankruptcy schedules.

What the record does show directly is that on April 26, 1982 debtors executed a deed on the 54 N. Main Street property to Damon A. Gordley, which deed was recorded April 28, 1982. The deed which is in evidence bears a transfer tax indication in the amount of $70.00, reflecting a purchase price of $70,000.00. Such notation was placed on the deed after it left debtors' possession. On April 29, 1982 Marty's father, Damon Gordley, paid the Farmer's Bank the $34,983.26 owing to them on the five notes on which Marty Gordley was primarily liable. On August 16, 1982 Damon Gordley paid off the mortgage on the 54 N. Main Street premises owing to the Adams County Building and Loan Company in the amount of $38,139.68.

11 U.S.C. § 727(a)(2)(A) provides as follows:

(a) The court shall grant the debtor a discharge, unless—

\*        \*        \*        \*        \*        \*

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition;

\*        \*        \*        \*        \*        \*

In *In re Reed*, 18 B.R. 462, 463 (Bkrtcy. E.D.Tenn.1982), it is stated that under this statute, four elements are required to be proven:

1. A transfer of property has occurred;
2. It was property of the debtor;
3. The transfer was within one year of the date of the filing of the petition;
4. The defendant had, at the time of the transfer, the intent to hinder, delay or defraud a creditor.

*See also,* 4 Collier on Bankruptcy (15th ed.) ¶ 727.02[b], p. 727–10.

The plaintiff has the burden of proving his objection to a discharge. Bankruptcy Rule 4005. *In re Martin,* 698 F.2d 883, 887 (7th Cir.1983), *In re Harron,* 31 B.R. 466, 468 (Bkrtcy.D.Conn.1983), and 4 Collier on Bankruptcy (15th ed.) ¶ 727.14[6], p. 727–87. In addition, the provisions relating to discharge are to be construed liberally in favor of the debtor and strictly against the creditor. *In The Matter of Decker,* 595 F.2d 185, 187 (3rd Cir.1979), *In The Matter of Jones,* 490 F.2d 452, 456 (5th Cir.1974), *In re Harron,* 31 B.R. 466, 468 (Bkrtcy.D.Conn.1983), *In re Hays,* 31 B.R. 285, 288 (Bkrtcy.E.D.Tenn.1983), *In re Kunec,* 27 B.R. 650, 652 (Bkrtcy.M.D.Pa.1982),

632

and 4 Collier on Bankruptcy (15th ed.) ¶ 727.01A, pp. 727–9.

In this case, it is not disputed that the transfer of the premises at 54 N. Main Street was perfected by recording on April 28, 1982, and that this was within one year of the date of the filing of the bankruptcy petition.

█ The final element under § 727(a)(2) is that the transfer was made "with intent to hinder, delay, or defraud a creditor." While it is well settled that the intent must be actual fraudulent intent as opposed to constructive intent, *In re Martinez,* 31 B.R. 299, 301 (Bkrtcy.D.Vt.1983), *In re Hess,* 21 B.R. 465, 467 (Bkrtcy.W.D.Va.1982), *In re Reed,* 18 B.R. 462, 464 (Bkrtcy.E.D.Tenn. 1982), *In re Tuttle,* 15 B.R. 14, 16 (Bkrtcy. D.Kan.1981), aff'd, 698 F.2d 414 (10th Cir. 1983), 4 Collier on Bankruptcy, (15th ed.) ¶ 727.02[3], p. 727–12, such intent may be proven by circumstantial evidence or in other words, an inference may be drawn from the debtor's actions, *In re Packard,* No. B–1–79–31, slip op. at 6 (Bkrtcy.S.D.Ohio entered Oct. 15, 1979), *In re Reed,* 18 B.R. 462, 464 (Bkrtcy.E.D.Tenn.1982), *In re Bernson,* 15 B.R. 100, 101 (Bkrtcy.S.D.Fla. 1981), *In re Rubin,* 12 B.R. 436, 441 (Bkrtcy.S.D.N.Y.1981).

█ We conclude that in this case the requirement of the requisite intent has been shown. No reason for the transfer of the 54 N. Main Street property to Damon Gordley, debtor Marty's father, emerges from this record other than that Damon be given the benefit of any equity in the property, and that the creditor of debtors be deprived of that equity. The fact pattern at hand is a classic one and falls squarely within the following language to be found at 4 Collier on Bankruptcy (15th ed.) ¶ 727.02[3], p. 727–13:

> The fact, however, that valuable property has been gratuitously transferred raises a presumption that such transfer was accompanied by the actual fraudulent intent necessary to bar a discharge under section 727(a)(2).

In an effort to rebut this presumption, debtors contend that there was no value in the property above the mortgage. The facts, however, are otherwise. The property was purchased in March 1981 for $37,000.00, and debtors thereafter expended a substantial part of loans totalling some $36,000.00 in improving the building before it was deeded to Damon on April 26, 1982. This evidence persuades us that there was equity in the property which should have been devoted to the benefit of general creditors. Nor is it any justification for the transfer that debtors could not keep up the payments. Even though likely true, the proper consequence which should have ensued was not to attempt to put the property beyond the reach of creditors, but to utilize it to satisfy their claims.

The Clerk will forward a copy of this Decision to the bankruptcy trustee in the related bankruptcy case so that he may undertake such steps as he concludes are appropriate in the circumstances.

In view of the foregoing discussion we have reached the conclusion that the discharge of debtors should be denied. The foregoing constitutes our findings of fact and conclusions of law.