In the Matter of Ines RIVERA de MONTES, Debtor.

**FUNERARIA PORTA COELI, INC., Plaintiff,**

v.

**Ines RIVERA de MONTES, Defendant.**

**Bankruptcy No. 87–01182(SEK). Adv. No. 87–0178.**

United States Bankruptcy Court, D. Puerto Rico.

July 17, 1989.

Roberto Pérez Obregon, Bayamón, P.R., for debtor.

Luis A. Nuñez Salgado, Cohen & Nuñez, Hato Rey, P.R., for plaintiff.

## OPINION AND ORDER

SARA E. DE JESUS, Bankruptcy Judge.

This is an adversary complaint requesting that the Debtor be denied the discharge on account of objections raised pursuant to

1. See Bankruptcy Rules 4004 and 7001(6).

11 U.S.C. Sec. 727(a)(2)(A), (a)(2)(B) & (a)(4).[1]

The parties have stipulated the following facts:

"That debtor's husband, Mr. Pedro Montes Hernández, died on March 29, 1987.

That debtor's deceased husband, Mr. Pedro Montes Hernández, received funeral services from the plaintiff Funeraria Porta Coeli, Inc. amounting to $3,226.00 and was buried on March 31, 1987.

The debtor filed a petition for relief under Chapter 7 in the instant action on June 5, 1987.

Debtor Inés Rivera de Montes transferred a certain house of her property located at 37 St. Blq. 42 No. 5, Sierra Bayamón, Bayamón, Puerto Rico, to her two only daughters Eileen Janet Plumey Rivera and Myra (sic) Plumey Rivera by equal shares of one-half each.

That said transfer was effected through Deed of Donation executed as Deed No. 41 in San Juan, Puerto Rico on October 1, 1986 before notary public Aida Martínez González; which Deed appears registered at the Registry of the Property."

At the trial of the case testimony was received from Mr. Leonardo Portela Morales, Mrs. Gladys Montes, Mr. Eugenio Portela, Dr. Luis A. Gandía Matos, Mr. Marvin Vélez, Debtor and Mrs. Mayra Plumey Rivera. The credible testimonies of these witnesses show:

1. The Deceased's second wife is Mrs. Inés Rivera de Montes, a 65 yr. old lady. Ms. Eileen and Mayra Plumey Rivera are her daughters by her first marriage. Mr. Marvin Vélez is married to Mayra.[2]

2. Mrs. Gladys Montes is the Deceased's daughter from a former marriage and she is married to Mr. Eugenio Portela.

3. Mr. Leonardo Portela Morales is a distant relative of Mr. Eugenio Portela, to whom Mr. Portela had referred other per-

2. In keeping with our latin tradition we have used maiden last names.

sons who needed funeral services. He is Plaintiff's funeral Director and President.

4. Dr. Luis A. Gandía is an expert witness, physician—a non board certified internist.

5. The funeral arrangements mentioned in the stipulated facts were apparently carried out by Mrs. Plumey and Mrs. Montes, on behalf of the bereaved widow, with Mr. Leonardo Portela. At this time Mr. Portela was led to believe that the funeral services would be paid by the widow from the insurance proceeds. When Plaintiff tried to collect its bill, Debtor claimed she was not liable for these expenses as she had not been the contracting party. Before the funeral parlor was able to collect, Debtor filed this Chapter 7 petition for bankruptcy and the automatic stay enjoined further collection efforts.

6. Debtor's schedules signed under penalty of perjury, failed to disclose that on October 1, 1986, within the year from the date of the filing of the petition, she donated real property as per deed No. 41, executed before Notary, Aida Martínez González, admitted as Plaintiff's Exhibit 1. Debtor had been the owner in fee simple of this realty acquired with financial help from her mother before she married the Deceased. Her mother had contributed to the down payment provided Debtor agreed transfer the title to her daughters once they reached legal age. Debtor and Mr. Montes continued living on the realty until he died; when Eileen then moved in with her mother. Ms. Eileen Plumey also produced cancelled checks and copies of money orders showing she paid the installment of the mortgage encumbering the donated realty at least as of December, 1986.[3]

7. The Deceased had likewise donated his interest in another realty property jointly owned with his former wife, the mother of Mrs. Montes.

8. The Debtor and the Deceased's children from his first marriage were the bene-ficiaries of a life insurance policy purchased by the Deceased. Debtor failed to disclose this as an asset in her schedules signed under penalty of perjury and did not mention it at the Sec. 341 Meeting of Creditors. She was paid, post petition, approximately $5,500.00. She used these funds for her living expenses and to pay local income tax, its accrued interest and surcharges.

9. Her only income after her husband's death is her Social Security Benefits of $400.00 per month.

10. At age 72, Mr. Montes urinated blood. He was hospitalized at Auxilio Mutuo from February 27 through March 1, 1985. The physical examination showed he had an enlarged prostate. The biopsy showed no pathology. He received post operative outpatient treatment from Dr. Hoyos for about two months, when he was told no further treatment was needed. The records also showed he had long been a diabetic. He took insulin daily and followed a diet.

11. On March 19, 1987 he was admitted at San Pablo's Hospital for ten days. The records show a diagnosis of adeno carcinoma of the prostate, diabetes mellitus, myorcardial ischemia and what appears to be bilateral nephritis. He died the day after he was released from the Hospital. The death certificate shows he died of pulmonary edema.

12. Between his first and second hospitalizations, Mr. Montes was treated for diabetes mellitus and showed the normal wear and tear of a man of his age.

## ISSUES

I. Did the Debtor fraudulently transfer the realty to her daughters?

II. Did the Debtor knowingly and fraudulently make a false oath when she failed to disclose the transfer of her realty

---

**3.** Her testimony that she made other payments but could not locate the cancelled checks or money orders to prove it, is believable.

Other testimony concerning remodeling of the kitchen and bathroom, purchase of a dinnette and a new car occurring before the petition was filed and indeed before Mr. Montes died, seems irrelevant given the sections of the Code invoked by Plaintiff.

and the interest in the insurance policy in her schedules?

III. Did Debtors conceal assets (tranferred realty and proceeds from insurance policy) to defraud her creditors?

## CONCLUSIONS OF LAW

11 U.S.C. Section 727 indirectly imposes an obligation on a debtor to deal fairly with creditors who in a liquidation case may receive assets of the estate. It embodies the basic principle in a Chapter 7 bankruptcy case: i.e., a debtor must deal fairly with his creditors in order to receive the benefit of the bankruptcy discharge.[4] When the debtor deals with his property in a fashion which causes injuries to creditors this section provides a vehicle under which abusive debtor conduct can be curtailed thru the denial of the discharge.[5]

Some of the most common objections to impermissible debtor conduct which fall within the purview of Section 727 of the Code, involve the fraudulent transfer or concealment of property, or fraudulently and knowingly making "a false oath or account." 11 U.S.C. Sections 727(a)(2) & (4).

■■■ For the objections to be granted, a plaintifff must prove, by a preponderance of the evidence, that the impermissible debtor conduct was done knowingly and with the intent to defraud creditors.[6] While some Courts have stated there is a shifting of the burden of proof, we agree with Judge Yacos in the *Riso* case when he states, the burden does not shift but may

be rebutted by explanations and disclosures.[7]

■■■ The Code requires proof of actual fraudulent intent as opposed to implied intent or intent presumed in the law.[8]

"Although actual intent must be shown, a finding of actual intent may be based on circumstantial evidence or inferences drawn by a course of conduct. This is because a debtor is unlikely to testify that the intent was fraudulent. Thus a court may look to all the surrounding facts and circumstances. A continuing pattern of wrongful behavior is one indication of fraudulent intent. Similarly, reckless indifference. to the truth has been held to be the equivalent of fraud under Section 727."[9]

As stated in *Norton* at Section 27.17,

"... several recurrent fact patterns can be identified that raise a rebuttable inference of fraudulent intent. The first involves prebankruptcy transfers of substantial property for nominal or no consideration...."

A second, common factual pattern involves the transfer of a substantial portion of the debtor's assets to a third party for minimum consideration while the debtor retains effective use and enjoyment of the property....

[However,] not all gifts made within one year of bankruptcy are made with the intent to defraud creditors or the bankruptcy estate. A debtor should not be denied discharge for ordinary manifesta-

---

4. *In Re Greenwalt,* 63 B.R. 555, 558–559 (Bkrtcy. Co., 1986); *In Re Tully,* 818 F.2d 106, 110 (C.A.1, 1987).

5. See 1 *Norton Bankruptcy Law and Practice,* Section 27.16; 4 *Collier on Bankruptcy,* Sections 727.01, 727.01(A) (15th ed.) This section is designed to insure that "... a discharge is a privilege granted only to such as do not practice [dishonesty] on their creditors in any way. The law forbids all efforts to put property beyond the reach of creditors, no matter what its value; so long as courts are tolerant of such conduct, men will engage in it and the purposes of the Bankruptcy Act will be balked." (cit. omitted) *In Re Steinberg,* 4 B.R. 593, 597 (Bkrtcy.Mass., 1980).

6. See 1 *Norton Bankruptcy Law and Practice,* Section 27.17; *In Re Rubin,* 12 B.R. 436 (Bkrtcy. S.D.N.Y., 1981); *In Re Nazarian,* 18 B.R. 143 (Bkrtcy.Md., 1982); *In Re Gordley,* 38 B.R. 630 (Bkrtcy., S.D.Ohio, 1984); *In Re Riso,* 74 B.R. 750, 757 (Bkrtcy.N.H., 1987).

7. 1 *Norton Bankruptcy Law and Practice,* Section 27.16.

8. 1 *Norton Bankruptcy Law and Practice,* Section 27.17; 4 *Collier on Bankruptcy,* Section 727.02[3] (15th ed.). "Section 727 must be construed liberally in favor of the debtor and strictly against the objector." See *Rubin* at p. 440 n. 7; *Gordley* at p. 631 n. 6.

9. *Collier, supra.* See *Tully* at p. 112, n. 4.

tions of charity or friendship. Similarly, not all transfers made without reciprocal new value being immediately received can be considered fraudulent even though they deny creditors access to property."

The question of whether the debtor had the necessary wrongful intent is a question of fact and is subject to review on appeal under a clearly erroneous standard. 4 *Collier on Bankruptcy*, Section 727.02[3]; See *Tully* at pp. 108–110 n. 4.

Moreover, Section 727(a)(2)(B) also requires the Plaintiff to prove that debtor, with the *requisite intent* to hinder, delay or defraud, either *concealed* estate property or *transferred* it to a third party *after* the petition was filed. (our emphasis)

Section 727(a)(4) calls on the plaintiff to prove the Debtor *knowingly* and *fraudulently* made a *false oath or account* of a *material* matter concerning the case. Most of the objections based on this false oath section of the law, arise due to debtor misstatements or omissions in the schedules or statement of financial affairs executed by the debtor, who verifies their completeness and accuracy. A false oath situation may also occur when debtor testifies at the Sec. 341 meeting. Materiality, under this Section, is generally established by debtor's failure to list a valuable asset. If debtor proves to the satisfaction of the court that the misstatement or omission was due to inadvertence, negligence or committed in good faith relying on advice of counsel, the requisite fraudulent intent is not established. "The entire thrust of this objection is to prevent knowing fraud or perjury in the case. As a result, the objection should not apply to minor errors or deviation in testimony under oath." [10]

In this case, the same fact pattern gives rise to the multiple objections to discharge. Hence, Plaintiff claims the discharge should be denied because the following allegations showed Debtor incurred in the conduct proscribed by the cited sections of the Bankruptcy Code.

■ Debtor answered question number 12 a & b of the Statement of Financial Affairs under penalty of perjury, indicating she made no transfer or other disposition of her property not in the ordinary course of business during the year preceding the filing of her petition.[11] Debtor has admitted she transferred her realty within the year of filing her petition, and that she answered this question incorrectly and under oath. However, she claims it was done inadvertently without the intention to defraud her creditors. As she explained to the Court, she donated her realty to her daughters by her first marriage to carry out her mother's wish, albeit tardily. Moreover, she and her deceased husband had agreed to dispose of their individual homes by donating it to their respective children and former spouse. At the time the transfer occurred, Debtor's husband was the recipient of substantial pensions which would sufficiently cover their financial needs and obligations. There was no evidence of his subsequent mortal illness and no debt with Funeraria Porta Coeli at the time of transfer. Debtor's daughter Eileen assumed the mortgage payments and after her stepfather died, she assumed the household expenses. Since the realty had been transferred for some time before the petition was filed, it is not unusual to believe Debtor committed the honest mistake she claims. These factors plus the Debtor's demeanor, lead us to conclude the requisite intent to defraud by creating a sham transfer was missing when she transferred the realty and answered question number 12.

■ When Debtor answered question number 7 of the Statement of Financial Affairs, under penalty of perjury, she failed to reveal she was the beneficiary of her deceased husband's life insurance policy. She did not mention it at the Sec. 341 meeting, failed to disclose the receipt of the insurance benefits post bankruptcy and claimed an exemption of $1,500 pursuant to Sec. 522(d)(11) when in fact she received

**10.** 1 *Norton Bankruptcy Law and Practice,* Section 27.18.

**11.** See Plaintiff's Exhibit 8.

$5,500.00 as one of the beneficiaries of the policy.[12] Debtor proved she used the life insurance proceeds to pay the Department of the Treasury's claim for income tax in the amount of approximately $3,500.00; using the remaining $1,500.00 for her personal expenses. What was her intent at the time she filled out her statement and at the time she received the money? It is undisputed that she really did not know whether she would be entitled to any policy proceeds at all at the time she filed the petition. When the funds did arrive all she could think of was to pay the taxes, whose tax returns she had filled out for the first time since her marriage, and cover some pressing economic needs. Her Social Security benefits were not only late in coming, but meager once these began. She used the money for her sustenance and did not do it with intent to defraud any creditor. The explanations and circumstances surrounding the events together with her demeanor were believable and therefore, the intention to defraud or knowingly lie, was absent.

Furthermore, the evidence and witnesses tended to show that this was one of those very unfortunate and sad cases of a family quarrel between children and spouses of different marriages over inheritance rights and obligations, with the funeral parlor caught in the middle. It is not a case of fraud against creditors.

WHEREFORE, the complaint is dismissed with prejudice.

The Clerk will enter judgment accordingly and give the notice.

12. Under 11 U.S.C. 522(d)(11), "The debtor may exempt the right to receive property that is traceable to ... payments under a life insurance contract that insured the life of a person upon whom the debtor was dependent, again to the extent necessary for debtor's or a dependent's support." 3 *Collier on Bankruptcy*, Section 522.-20 (15th ed.).