Kevin J. BARRY, Jr. and Kimberly
A. Barry, Debtors.

Joyce A. Warchol, Plaintiff–Appellee,

v.

Kevin J. Barry, Jr. and Kimberly A.
Barry, Defendants–Appellants.

BAP No. MW 10–058.
Bankruptcy No. 07–44352–HJB.
Adversary No. 08–04040–HJB.

United States Bankruptcy Appellate Panel
for the First Circuit.

June 9, 2011.

**656**

Stephen F. Gordon, Esq., Todd B. Gordon, Esq., and Ashley S. Whyman, Esq., on brief for Defendants–Appellants.

Michael B. Feinman, Esq., and Stephen P. Shannon, Esq., on brief for Plaintiff–Appellee.

Before HAINES, VOTOLATO, and DEASY, United States Bankruptcy Appellate Panel Judges.

VOTOLATO, U.S. Bankruptcy Appellate Panel Judge.

The debtors, Kevin J. Barry, Jr. ("Mr. Barry") and Kimberly A. Barry ("Mrs. Barry") (collectively "the Barrys"), appeal from a bankruptcy court judgment denying their chapter 7 discharges under § 727(a)(2)(A).[1] In ruling for the appellee, Joyce Warchol ("Warchol"), the bankruptcy court concluded that the Barrys granted four pre-petition mortgages with the intent to hinder or delay the collection of Warchol's judgment debt against Mr. Barry. For the reasons discussed below, the judgment denying discharge is **REVERSED** as to Mrs. Barry and AFFIRMED as to Mr. Barry.

### BACKGROUND

#### A. Pre–Petition Events

Prior to the commencement of this bankruptcy case, Mr. Barry was a contractor in Massachusetts, where he and his wife owned a residence as well as an investment property. Warchol, a Massachusetts homeowner, wanted to remodel her house to make it suitable for her elderly mother. In June 2003, Mr. Barry contracted with Warchol to renovate her home for the initial sum of $35,000.00 ("the Project"). However, the complexity and size of the Project quickly exceeded Mr. Bar-

---

1. Unless otherwise indicated, the terms "Bankruptcy Code", "section" and "§ " refer to Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, 119 Stat. 37.

ry's qualifications, and he lacked the licenses necessary to obtain permits even to perform the work. When the project failed to progress beyond the demolition phase, Warchol paid Mr. Barry additional sums to prevent his leaving the job, as Mr. Barry had threatened. Altogether, Warchol paid Mr. Barry $75,300.00. By April 2004, work on the Project ceased and Warchol's home was in shambles. Warchol commenced suit against Mr. Barry on July 1, 2004, in the Essex Superior Court, Department of the Trial Court ("the state court action") and sought an attachment of the Barrys' residence located at 74A Pond Street, Methuen, Massachusetts (the "Pond Street Property"). Warchol's request was denied, at least in part due to Mr. Barry's false affidavit submitted in support of his objection. On July 20, 2004, one day after Mr. Barry received service of Warchol's complaint, the Barrys applied for a $90,000.00 home equity loan which was approved on August 2, 2004.

Warchol and Mr. Barry's dispute went to arbitration and on October 12, 2007, an award entered in favor of Warchol in the amount of $234,599.03 ("the Award"). The Award was filed with the state court on November 13, 2007, and on November 29, 2007, in order to secure the Award and anticipated state court judgment,[2] Warchol tried to attach the Barrys' investment property located at 171–175 Broadway, Methuen, Massachusetts ("the Broadway Property"). Prior to the Award, the Barrys granted three mortgages on the Broadway Property and immediately after entry of the Award, they granted a fourth, all to creditors other than Warchol. The Barrys granted the four mortgages (collectively "the Mortgages") while they were insolvent.

The details of the Mortgages are as follows: on April 12, 2007, the Barrys, as Trustees of Broadway Realty Trust, granted a mortgage to the law firm of Carragher, Fox & Roark, P.C. in an unspecified amount to secure payment of past and future legal services rendered on the Barrys' behalf; on August 23, 2007, the Barrys, as Trustees of Broadway Realty Trust, granted a mortgage to Attorney Richard L. Fox (of Carragher, Fox & Roark, P.C.) to secure payment of past and future legal services on Mr. Barry's behalf; on September 16, 2007, the Barrys, as Trustees of Broadway Realty Trust, granted a mortgage to White Street Paint and Wallpaper Co., Inc. to secure a payment for paint purchases; and on October 16, 2007, four days after the Award, the Barrys, as Trustees of Broadway Realty Trust, granted a mortgage to the law firm of Barron & Stadfeld, P.C., in the amount of $9,692.98 to secure payment of past legal services.

In November 2007, about one month after the Award, the Barrys sold the Broadway Property, while Warchol's request for a post-judgment attachment was pending, and they satisfied the Mortgages from the sale proceeds. The state court ordered Mr. Barry to pay his remaining share of the proceeds (approximately $26,000.00) to Warchol in partial satisfaction of the Award.

**B. The Bankruptcy Proceedings**

On December 16, 2007, less than one year after the granting of the Mortgages, the Barrys filed a joint chapter 7 petition. Warchol filed a proof of claim in the bankruptcy case in the amount of the Award, specifying neither Mr. Barry nor Mrs.

---

**2.** Based upon the Award, judgment entered for Warchol in the state court action on December 17, 2007.

Barry as the obligor. In March 2008, Warchol commenced an adversary proceeding against the Barrys with a six-count complaint. In Counts I and II, she sought to except her claim against Mr. Barry from discharge under § 523(a)(2)(A) and (a)(6), respectively. In Counts III through VI, she sought denial of the Barrys' discharges under § 727(a)(2)(A), (a)(3), (a)(4)(A), and (a)(5). After a four-day trial, the bankruptcy court concluded, based upon the totality of the circumstances, that the Barrys acted with actual intent to hinder and delay the collection of Warchol's claim in violation of § 727(a)(2)(A) when they granted the Mortgages within one year of their bankruptcy case, holding that "[t]he pattern and chronology of transfers can lead to no other conclusion." The bankruptcy court denied the Barrys' discharges on July 14, 2010 on § 727(a)(2)(A) grounds, without addressing Warchol's other theories. This appeal followed.

### JURISDICTION

A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if the issue is not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.,* 226 B.R. 724 (1st Cir. BAP 1998). A panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1) ] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3) ]." *Fleet Data Processing Corp v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998). "The Panel has repeatedly ruled that a judgment denying discharge under § 727 is a final order." *Gagne v. Fessenden (In re Gagne),* 394 B.R. 219, 224 (1st Cir. BAP 2008) (citing *Fagnant v. Cohen Steel Supply, Inc. (In re Fagnant),* 337 B.R. 729 (1st Cir. BAP 2006)) (citations omitted).

Accordingly, the Panel has jurisdiction to hear this appeal.

### STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo. See Lessard v. Wilton–Lyndeborough Coop. School Dist.,* 592 F.3d 267, 269 (1st Cir.2010). In reviewing a judgment denying a debtor's discharge under § 727(a)(2)(A), "the Panel applies the clearly erroneous standard to the bankruptcy court's findings of fact, and the 'inferences which the judge below has drawn from the facts of the record.'" *Stornawaye Fin. Corp. v. Hill (In re Hill),* 387 B.R. 339, 345 (1st Cir. BAP 2008) (quoting *Boroff v. Tully (In re Tully),* 818 F.2d 106 (1st Cir.1987)), *aff'd,* 562 F.3d 29 (1st Cir.2009). "Whether a debtor possessed the necessary wrongful intent under § 727(a)(2)(A) is a question of fact, subject to the clearly erroneous standard of review." *Womble v. Pher Partners (In re Womble),* 299 B.R. 810 (N.D.Tex.2003) (citing *First Tex. Sav. Ass'n v. Reed (In re Reed),* 700 F.2d 986, 991–92 (5th Cir. 1983)), *aff'd,* 108 Fed.Appx. 993 (5th Cir. 2004). "If any reasonable view of the proof supports denial of the discharge (and absent any error of the law)," the Panel must uphold the bankruptcy court's ruling. *In re Tully,* 818 F.2d at 109.

### DISCUSSION

**I. The Denial of Discharge**

Section 727(c)(1) provides the statutory basis for standing to object to a debtor's discharge. That statute provides that only "[t]he trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of this section." Section 727(a) identifies ten grounds for objecting to the debtor's receipt of a discharge. *See* 11 U.S.C.

§ 727(a). Section 727(a)(2)(A), which controls this appeal, provides, in pertinent part, that:

(a) The court shall grant the debtor a discharge, unless—

. . .

(2) the debtor, with intent to hinder, delay or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . .

(A) property of the debtor, within one year before the date of the filing of the petition . . .

11 U.S.C. § 727(a)(2)(A) (2006).

The First Circuit has ruled that four elements are required to deny a discharge under § 727(a)(2)(A): "(1) transfer or concealment of property, (2) that belonged to the debtor, (3) less than a year before the bankruptcy petition, (4) with actual intent to hinder, delay or defraud a creditor." *Marrama v. Citizens Bank (In re Marrama)*, 445 F.3d 518, 522 (1st Cir. BAP 2006) (citing *Razzaboni v. Schifano (In re Schifano)*, 378 F.3d 60, 66–67 (1st Cir.2004)). To prevail on a complaint seeking denial of discharge under § 727(a)(2)(A), the plaintiff must prove each element by a preponderance of the evidence. *Antognoni v. Basso (In re Basso)*, 397 B.R. 556, 562 (1st Cir. BAP 2008). "Given the serious nature of a discharge denial, the reasons for denying a discharge must be real and substantial, not merely technical and conjectural." *Annino, Draper & Moore, P.C. v. Lang (In re Lang)*, 246 B.R. 463, 468 (Bankr.D.Mass.), *aff'd*, 256 B.R. 539 (1st Cir. BAP 2000). "In light of the effect on the [d]ebtor, a denial of discharge is an extreme step that should not be taken lightly . . ., and, therefore, the provisions of § 727 should be construed liberally in favor of debtors." *Id.* (internal and external citations omitted). "Objections to discharge should be 'narrowly construed in furtherance of the Bankruptcy Code's fresh start policy and the claimant must show that its claim comes squarely within an objection enumerated in Bankruptcy Code § 727(a)(2).'" *Id.* (citations omitted). The denial of discharge for pre-petition conduct should be "limited to those cases where a debtor's actions are truly blameworthy in an equitable sense." *Panuska v. Johnson (In re Johnson)*, 80 B.R. 953, 960 (Bankr.D.Minn.1987), *aff'd*, 101 B.R. 997 (D.Minn.1988).

Here, the bankruptcy court focused on the Mortgages to reach the conclusion that three of the four required elements under *Marrama, supra*, are present: a transfer; of property of the debtor; within one year of the filing of the debtor's bankruptcy petition. The Barrys do not dispute the existence of these elements. Their argument on appeal turns, instead, on the fourth element: intent to hinder or delay. The Barrys contend that neither of them acted with the intent specified under the statute, and further, that Mrs. Barry's intent is irrelevant since Warchol is not her creditor.

## II. The Intent Issue

In determining whether a debtor possessed culpable intent within the meaning of § 727(a)(2)(A), courts traditionally consider the "totality of circumstances." *See Cadlerock Joint Venture II, L.P. v. Beaudoin (In re Beaudoin)*, 380 B.R. 121, 128 (D.Conn.2007); *Emerging Vision, Inc. v. Sundstrom (In re Sundstrom)*, 374 B.R. 663, 670 (Bankr.E.D.Wis.2007); *The CIT Group/Sales Financing, Inc. v. Lord (In re Lord)*, 244 B.R. 196, 201 (Bankr.D.N.H. 1999). Inferences regarding the debtor's actual intent are drawn from the totality of circumstances. *In re Lang*, 246 B.R. at 469 (citing *Van Kampen Merritt, Inc. v. Hoffman (In re Sterman)*, 244 B.R. 499, 504 (D.Mass.1999); *Citizens First Nat'l*

*Bank v. Hunter (In re Hunter),* 229 B.R. 851, 857 (Bankr.M.D.Fla.1999); *Najjar v. Kablaoui (In re Kablaoui),* 196 B.R. 705, 709 (Bankr.S.D.N.Y.1996); *Funeraria Porta Coeli, Inc. v. Rivera de Montes (In re Rivera de Montes),* 103 B.R. 362, 365 (Bankr.D.P.R.1989)).

■ The First Circuit considers the following indicia of fraudulent intent:

(1) insider relationship between the parties; (2) the retention of possession, benefit, or use of the property in question; (3) the lack or inadequacy of consideration for the transfer; (4) the financial condition of the [debtor] both before and after the transaction at issue; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of the debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the events and transaction under inquiry; and (7) an attempt by the debtor to keep the transfer a secret.

*In re Marrama,* 445 F.3d at 522 (citing *Groman v. Watman (In re Watman),* 301 F.3d 3, 8 (1st Cir.2002)); *see also Max Sugarman Funeral Home, Inc. v. A.D.B. Investors,* 926 F.2d 1248 (1st Cir.1991). Courts agree that "the concurrence of several tell-tale 'badges of fraud' will support a finding that the debtor acted with the necessary fraudulent intent." *In re Sterman,* 244 B.R. at 504.

**A. Mrs. Barry**

■ Mrs. Barry argues that even if she did possess an intent to hinder or delay collection of Warchol's claim, she is entitled to her discharge because Warchol is not her creditor, but rather, her husband's. This argument essentially challenges Warchol's standing to object to

Mrs. Barry's discharge, although Mrs. Barry has not framed the argument in standing terms. Warchol counters that this defense is waived because it is raised for the first time on appeal. The First Circuit has stated unequivocally that "a defect in standing cannot be waived; it must be raised, either by the parties or by the court, whenever it becomes apparent." *U.S. v. AVX Corp.,* 962 F.2d 108, 116 n. 7 (1st Cir.1992); *see also Sentinel Trust Co. v. Newcare Health Corp. (In re Newcare Health Corp.),* 244 B.R. 167, 172 (1st Cir. BAP 2000) (holding that "the question of standing is jurisdictional, cannot be waived, and remains open to review during all stages of the litigation").

■ Here, it is undisputed that the only basis for Warchol's claim is the Award against Mr. Barry. Even at oral argument, Warchol's counsel was unable to articulate any legitimate basis for a claim against Mrs. Barry when asked by the Panel to do so. Section 101(10) provides that a creditor means an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." *See* 11 U.S.C. § 101(10). Section 101(5) further provides that a claim means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5). Even under this broad statutory definition of "claim," Warchol has no claim against Mrs. Barry and is not her creditor within the meaning of § 101(10). Furthermore, courts have stated that "the filing of a joint petition does not, by itself, consolidate the estates and their concomitant liabilities." *In re Blair,* 226 B.R. 502, 505 (Bankr. D.Me.1998); *see also* 11 U.S.C. § 302(b).[3]

---

**3.** Section 302(b) provides that "[a]fter the                    commencement of a joint case, the court shall

Only a substantive consolidation under § 302(b) produces that effect. *Id.* Since the record here reveals no consolidation of the Barrys' bankruptcy estates under § 302(b), their assets and liabilities must remain separate, and Mr. Barry's liability for the Award does not extend to Mrs. Barry.

■■■ The First Circuit has yet to address the question of whether a chapter 7 discharge may be withheld from a jointly petitioning debtor where, as here, the complaining party holds no claim against such joint debtor. Other courts, however, have addressed the issue. For example, in *Pelham Plate Glass, Inc. v. Charette (In re Charette)*, 148 B.R. 94 (Bankr.D.Mass. 1992), a case which is factually similar to the one at bar and relied upon heavily by Mrs. Barry, the plaintiff unsuccessfully objected to the discharge of the debtor-wife under § 727(a)(2)(A) on the ground that she and her debtor-husband conveyed their residence within one year of bankruptcy and at a time when the husband, alone, owed a judgment debt to the plaintiff. Without regard to questions of the debtor-wife's intent, the court in *Charette* granted her discharge, notwithstanding her participation in the subject conveyance. Instead, the court relied, implicitly, on the plaintiff's lack of standing under § 727(c)(1), and its resulting inability to reach the debtor-wife's assets:

> As to Plaintiff [sic] Frances Charette ... the objection to discharge must be overruled. The Plaintiff was not her creditor but her husband's, and the Plaintiff could not reach her interest in the property to satisfy its judgment against her husband. In short, her conveyance of her interest in the property did not defraud the Plaintiff.

*Id.* at 96. In *Rosen's Inc. v. Souers (In re Souers)*, No. 93–93080, 1996 WL 34486696, *5–6 (Bankr.S.D.Iowa June 14, 1996), the bankruptcy court explicitly relied on § 727(c)(1) in dismissing the plaintiff's complaint objecting to discharge as to the joint debtor-wife for lack of standing, where the plaintiff held a guaranty signed only by the debtor-husband and was therefore not the debtor-wife's creditor. The court held that "a party whose claim has been conclusively disproved does not have standing and cannot object to a debtor's discharge." *Id.* at *6.

■■■ Based on the foregoing discussion, the Panel concludes that the bankruptcy court may not deny a co-debtor a chapter 7 discharge under § 727(a)(2)(A), regardless of the co-debtor's intent, in the absence of consolidation, when the complaining party is not his/her creditor as required by § 727(c)(1). It follows that because Warchol is not Mrs. Barry's creditor, she has no standing under § 727(c)(1) to object to Mrs. Barry's discharge. Accordingly, the bankruptcy court committed an error of law in denying Mrs. Barry a discharge.

### B. Mr. Barry

The first prong of Mr. Barry's argument is that he "presented legitimate reasons for the transfers" which preclude a finding of actual intent to hinder or delay. He claims that he and Mrs. Barry granted the April 2007 mortgage and the August 2007 mortgage to Carragher, Fox & Roark, P.C. because the firm "refused to provide legal services absent security." Similarly, he contends that they granted the September 2007 mortgage because the grantee, White Street Paint and Wallpaper Co., Inc., "refused to provide any more materials to [Barry] unless the Barrys did something with respect to an outstanding indebtedness...." Lastly, he contends that

---

determine the extent, if any, to which the

debtors' estates shall be consolidated."

they granted the October 2007 mortgage, fearing "legal repercussions if they did not satisfy their payment obligation" to Barron & Stadfeld, P.C. Mr. Barry further argues that while the Mortgages might constitute preferences, they are not grounds for denial of discharge. *Id.*[4]

██ Mr. Barry's exculpatory reasons for the Mortgages are misplaced. Courts have made clear that "withholding funds from one creditor to pay another does not absolve [a] debtor of the violation of § 727." *Locke v. Schafer (In re Schafer)*, 294 B.R. 126, 131 (N.D.Cal.2003) (debtor violated § 727(a)(2)(A) by opening new bank account because creditor attached other account). In *Cadle Company v. Marra (In re Marra)*, 308 B.R. 628, 630 (D.Conn.2004), the court held that the debtor's proffered justification for the challenged transfer is not necessarily controlling under § 727(a)(2)(A): "[T]he mere fact that the debtor's actions were intended to benefit some creditors does not necessarily preclude a finding that the debtor also intended to hinder or delay another creditor, thus warranting denial of a discharge." *Id.; see also Shappell's, Inc. v. Perry (In re Perry)*, 252 B.R. 541, 547–48 (Bankr.M.D.Fla.2000) (discharge improper even though debtor used funds to pay some creditors to the detriment of others to keep business afloat); *Camacho v. Martin (In re Martin)*, 88 B.R. 319, 322–23 (D.Colo.1988) (reversing decision granting discharge to debtor who changed bank accounts to prevent creditor's garnishment on grounds that debtor's proffered justification of paying off other creditors was

"merely pretextual"). Consistent with these cases, the bankruptcy judge here correctly held that a debtor may not act to prefer one creditor with the specific intent to delay impermissibly another creditor.

The second prong of Mr. Barry's argument is that the bankruptcy court erred in focusing "solely . . . on the timing of certain transfers" to find an intent to hinder or delay. The bankruptcy judge necessarily focused on the timing of the Mortgages because § 727(a)(2)(A) contains a one-year look back period. *See* 11 U.S.C. § 727(a)(2)(A). A proper § 727(a)(2)(A) analysis without consideration of timing would be useless if not impossible. But timing was merely one of many factors comprising the totality of circumstances considered by the bankruptcy court. The court's lengthy and largely undisputed recitation of facts contradicts Mr. Barry's argument that chronology was the court's sole consideration.[5] The facts set out in the bankruptcy court's Memorandum of Decision include: that Mr. Barry had neither the proper license nor permits to complete the Project as represented; that he extracted payment from Warchol before abandoning the Project altogether; that the Barrys applied for a home equity loan on July 20, 2004, the day after receiving service of Warchol's state court complaint (in a lawsuit wherein she sought an attachment of the Pond Street Property); that Mr. Barry made several misrepresentations in the affidavit he filed opposing Warchol's requested real estate attachment; that a substantial arbitration award

---

**4.** It does not appear that the trustee pursued any preferences.

**5.** The only finding of fact which the Barrys dispute is the sale date of the Broadway Property. They argue that the sale occurred on November 28, 2007, while the Memorandum of Decision reflects a sale date of November 30, 2007. The HUD Settlement Statement

relating to the sale supports the Barrys' contention insofar as it shows a Settlement Date of November 28, 2007 (and a Disbursement Date of November 30, 2007). This discrepancy, however, only serves to enhance the proximity of the Broadway Property sale to the date of the Award, October 12, 2007.

entered against the Barrys and in favor of Warchol on the eve of the Barrys' furthering encumbering the Broadway Property; and that the Barrys were financially troubled at the time of the Mortgages.

After considering the foregoing circumstances, only then did the bankruptcy court scrutinize the chronology of transfers. That chronology yields the following sequence of events:

| July 19, 2004 | Warchol served Mr. Barry with complaint and request for attachment |
|---|---|
| July 20, 2004 | Barrys applied for home equity loan |
| April 12, 2007 | Mortgage granted in favor of Carragher, Fox & Roark, P.C. |
| August 23, 2007 | Mortgage granted in favor of Richard L. Fox, Esq. |
| September 16, 2007 | Mortgage granted in favor of White Street Paint and Wallpaper Co., Inc. |
| October 12, 2007 | Award |
| October 16, 2007 | Mortgage granted in favor of Barron & Stadfeld, P.C. |
| November 13, 2007 | Award filed with Superior Court |
| November 29, 2007 | Warchol sought attachment |
| November 30, 2007 | Broadway Property sold |
| December 16, 2007 | Barrys filed chapter 7 bankruptcy petition |

This chronicle demonstrates not only that the proverbial "wolf was at the door," but also that Mr. Barry knew he was there. *See In re Lang*, 246 B.R. at 470 ("When a debtor, with the 'wolf at the door,' chooses to make sizable transfers of nonexempt property ..., the debtor had better have a story to tell, and tell it better, than the debtor here.").

■ Applying the First Circuit's indicia of improper intent articulated in *In re Marrama, supra*, there is ample evidence to support the bankruptcy court's finding that Mr. Barry intended to hinder or delay Warchol's collection of her claim. A review of the record within the framework of the seven *Marrama* indicia shows that: (1) the Barrys granted all of the Mortgages to entities with whom they had either an existing business or attorney/client relationship; (2) the Barrys granted all of the Mortgages when they were insolvent; and (3) the Mortgages cumulatively consumed all but $26,686.08 of equity that would

otherwise have been available to satisfy Warchol's $234,599.03 claim.[6] Thus, enough of the badges of fraud are present, thereby satisfying the standard articulated in *Sterman, supra*. In fact, the record discloses not only a plethora of factors from which intent to hinder or delay may be inferred, but a series of transfers as well, such that the bankruptcy court's finding of intent is fully supported by the record. *See In re Lang*, 246 B.R. at 469 (holding that "the accumulation of several factors indicates strongly that a debtor possessed the requisite improper intent").

## CONCLUSION

For the reasons discussed above, the Panel concludes that the bankruptcy court erred in denying Mrs. Barry's discharge under § 727(a)(2)(A); the Panel further concludes that the bankruptcy judge did not abuse his discretion in denying Mr. Barry's discharge under the same section. The judgment appealed from is, therefore,

---

**6.** The net proceeds from the sale totaled $53,872.16, of which Mr. Barry was entitled to $26,686.08, representing only his half, according to the state court.

REVERSED as to Mrs. Barry and AFFIRMED as to Mr. Barry.